In the Matter of the Estate of
TUI POIALI'I aka TUI BOI, Deceased

High Court of American Samoa
Trial Division

PR No. 24-76

June 5, 1990

Before REES, Associate Justice, VAIVAO, Associate Judge, and
AFUOLA, Associate Judge.

Counsel: For Manu'a, John L. Ward II
For Manuma, Charles V. Ala'ilima

Tui Poiali'i, a resident of American Samoa, died in San
Francisco in the early morning hours of May 6, 1973. About three years
later a son by decedent's first marriage, Manuma Tui Poiali'i, offered a
will for probate. The will was dated May 3, 1973. It named Manuma
as executor and left all the decedent's property to his children by the first
marriage.

The probate action then languished for about twelve years. In
1988 the Court reviewed its old files and ordered Manuma to file an
accounting. Apparently as a result of some activity generated by this
order, the Court was then presented with a second will. This one was
filed by Manu'a Peau Poiali'i, who had been the third and final wife of
the deceased. It distributed the decedent's property to Manu'a herself,
except for two conveyances (or "confirmations" of "assignments") of

interests in real property which, we have learned, may or may not have been the decedent's to convey.  This will was dated March 21, 1973.

An evidentiary hearing was held with respect to the validity of the two wills.  The principal witness on behalf of the March 21 will was the widow, Manu'a; the principal witness for the May 3 will was the son, Manuma.  Manu'a also presented a deposition from one of the two subscribing witnesses to the March 21 will.  Manuma did not present the testimony or affidavit of any of the witnesses whose names appear on the May 6 will.

A.S.C.A. § 40.0102 provides in pertinent part that "the signature of the testator . . . must be witnessed by 2 competent persons who shall sign their names thereto as attesting witnesses." This provision incorporates a rule which has long been in effect throughout the Anglo-American legal world, with variations from jurisdiction to jurisdiction.

Rule 11 of the Territorial Court Rules of Probate Procedure provides that "the valid execution of a will, the capacity of the testator to execute the will and the voluntariness of the execution" must be proved by the testimony or affidavit of one of the attesting witnesses to the will.  Rule 11 further provides that "[i]f both attesting witnesses are dead or unlocatable, the Court may accept whatever extrinsic evidence as to the validity of the will as the Court deems appropriate." This provision also restates the general rule in most jurisdictions.

The deposition testimony of Sapele Taito was to the effect that during March of 1973 she signed a "document concerning Tui Poiali'i." She said she did not know what the document was or what it meant.  She further testified that she signed the document inside Poiali'i's house in Pago Pago.  She identified her own signature on the will and that of the other subscribing witness, who has passed away.  She did not recognize the signature of Tui Poiali'i himself, because he did not sign in her presence.  She did say that Tui, as well as his wife Manu'a, were there when she and the other witness signed the document and that Tui did not appear to be ill.  This was the extent of her testimony.

This testimony is insufficient to prove that Tui Poiali'i executed the March 21 will.  The requirement of A.S.C.A. § 40.0102 that "the testator's signature . . . must be witnessed" is not fulfilled when the "witness" has no idea whether the signature is that of the testator or not.  Such knowledge can be obtained either by the witness's observation of the testator in the act of signing or by the testator's later acknowledgment

of the signature. *Estate of McKellar*, 380 So.2d 1273 (1980); *Manners v. Manners*, 66 A. 583 (N.J. Eq. 1907); *Atkinson on Wills* § 66 (2d ed. 1953). Some courts have held that the testator must specifically acknowledge not just the document but the signature itself. *Argo v. Geise*, 134 S.E.2d 134 (1968). Others have required only that the testator make it clear to the witnesses that the document was intended to be his will. *Estate of Cunningham*, 487 A.2d 777, 778 (N.J. App. 1984); *Luper v. Werts*, 23 P. 850 (Or. 1890). "However, the bare presence of the testator when the witnesses sign is not an acknowledgment. There must be something more than simple passivity." *Atkinson on Wills* § 66 at 325 (citations omitted). Here there was evidence of the testator's bare presence and nothing more.

The proof of the May 3 will was even less satisfactory. None of the witnesses testified and no affidavit from any of them was offered. Manuma testified that the three witnesses were friends of a friend of his, brought to the hospital in which Tui Poiali'i lay dying for the express purpose of witnessing the will. He said he had never seen any of them before, never saw any of them again, and had no idea how to get in touch with any of them. All he could remember was that they were all about twenty-one years old in 1973. (It seems that the friend had initially procured some younger witnesses, but had then been informed that twenty-one-year-olds would be necessary.)

Provisions such as that of our Rule 11, to the effect that wills may be proved by other evidence when the subscribing witnesses are unavailable, have been uniformly interpreted to require a showing that the witnesses could not have been located by the exercise of due diligence. *Gillis v. Gillis*, 23 S.E. 107 (Ga. 1895); *Tackett v. Tackett*, 265 S.W. 336 (Ky. 1924); *Helms v. Sheek*, 77 So.2d 820 (Miss. 1917). It follows *a fortiori* that the evidence should be sufficient to convince the Court that the subscribing witnesses actually did exist.

*Atkinson on Wills* provides the following suggestion on the choice of witnesses to a will:

> In the case of a testator in the prime of life, of undoubted mental competency, and not subject to undue influence . . . . it would not be objectionable if the witnesses had no previous acquaintance with the testator. Such witnesses should be introduced to the testator by a common acquaintance, however, and the parties should be permitted to talk together for a few

113

> moments in order that the witnesses can throw some light upon the mental state of the testator. Of course one should not select a legatee or devisee or anyone who might be considered financially interested . . . . Naturally, the witnesses should be sufficiently mature so that no question might arise on this score. . . . They should be permanent residents of the locality so that they can be reached readily when needed. A witness who is deceased presents less of a problem upon probate than one who cannot be located. . . .
>
> When the testator is old and infirm, or if there are any possible circumstances upon which his competency might be questioned, it is advisable to choose the attesting witnesses from among the testator's closest acquaintances.

*Id.* § 74 at 351-52. Manuma, whose own testimony made it clear that he was the principal organizer of the May 3 will, violated every rule in the book. The testator was about to die; his medical records raise serious questions about his testamentary capacity in the days before his death; his signature on the will, assuming it to be his signature, was so faint that somebody later found it necessary to trace over the signature with a darker pen; the will specifically disinherits a widow and three young children; and Manuma chose witnesses who were virtually guaranteed to be unavailable to testify and whose evidence about the identity and capacity of the testator would in any event have been next to useless. He offered no explanation of why the (unidentified) attorney who prepared the will did not also attest it, or why attending medical personnel or family friends were not asked to be witnesses. Indeed, it is hard to understand why it was necessary for Manuma's friend to go out and find *three* twenty-one-year-olds rather than serve as a witness himself. The trier of fact is told, in effect, that the will was obtained from an honest-looking fellow in a bar who said he found it when it fell off a truck.

Under these circumstances we do not "deem appropriate" the interested testimony of Manuma himself as sufficient extrinsic evidence of the validity of the May 3 will.

Accordingly, we find that Tui Poiali'i died intestate. A.S.C.A. § 40.0305 provides that his widow, Manuma, has the statutory right to serve as administratrix. She has already applied and is therefore

appointed. She shall provide an inventory of the property in the estate within three months. (We understand that a further hearing may be necessary to determine, inter alia, whether the house occupied by the parents of Manu'a and a property called "Nuumau" apparently now in the possession of Manuma are property of the estate. We urge once again that all parties attempt to reach a reasonable settlement in lieu of further litigation.)

Manu'a will be issued letters of administration upon submission of such letters by her counsel along with proof that she has taken the requisite oath.

It is so ordered.